2026 UT App 79

# THE UTAH COURT OF APPEALS

IN THE MATTER OF THE GUARDIANSHIP OF
DAVID HAROLD MATTHEWS

TAMI JEAN MATTHEWS,
Appellant,
*v.*
DAVID TODD MATTHEWS,
Appellee.

Opinion
No. 20240822-CA
Filed May 14, 2026

Third District Court, Salt Lake Department
The Honorable Kristine Johnson
No. 223900074

Russell Yauney, Attorney for Appellant

Zenock Bishop, Attorney for Appellee

JUDGE JOHN D. LUTHY authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN M. HARRIS
concurred.

LUTHY, Judge:

¶1 Siblings David Todd Matthews (Todd)[1] and Tina Marie Matthews Forsgren were appointed as guardians of their father, David Harold Matthews (Father). Tami Jean Matthews, another sibling, subsequently filed a petition seeking, among other things, to remove Todd and Tina as guardians. Todd and Tina filed a motion for summary judgment, which the district court granted.

---

1. As is our usual practice, because the parties and their siblings share a surname, we use their given names, with no disrespect intended by the apparent informality.

More than fourteen days later, Todd and Tina filed a motion requesting attorney fees on the basis that Tami's petition had been "without merit." Tami opposed the request for attorney fees. The court determined that Tami's petition had been "without merit," and it therefore granted Todd and Tina's request for attorney fees. The court acknowledged that the motion for attorney fees had been untimely filed, but it reasoned that Tami had failed to strictly comply with rule 73 of the Utah Rules of Civil Procedure "by filing an 'Opposition' rather than an 'Objection'" and, therefore, that it would be inequitable to enforce the timing requirement for attorney fees motions against Todd and Tina.

¶2 Tami appeals the district court's grant of summary judgment and its award of attorney fees. Because Father passed away during the pendency of this appeal, however, we have determined that the issues involving the summary judgment order are moot and only the attorney fees issue remains in Tami's appeal. But because Todd and Tina contend that we lack jurisdiction to consider Tami's appeal due to Tami's failure to include Tina's name on the notice of appeal or in her principal brief, we must also address that jurisdictional issue. On that issue, we conclude that we have jurisdiction. On the attorney fees issue, we first conclude that the court erred in determining that Tami had failed to strictly comply with rule 73. We further conclude that, even if the court still acted within its discretion by not strictly enforcing the deadline for Todd and Tina to file their request for attorney fees, it erred in its determination that Tami's petition was "without merit." We therefore reverse the award of attorney fees.

## BACKGROUND

*The Guardianship and Subsequent Litigation*

¶3 Todd and Tina sought to be appointed as guardians of Father, who was incapacitated. Tami objected to their appointment. The court held an evidentiary hearing on the matter, and subsequently, in an April 2023 order (the Order), it

appointed Todd and Tina (the Guardians) as guardians and imposed restrictions on Tami's visits with Father. Specifically, the court stated, "Tami may have regular uninterrupted visits for a cumulative total of ninety (90) minutes a week, so long as the visits do not interfere with [Father's] appointments with medical providers or his mealtimes," and, "Tami may visit [Father] every third Sunday for three (3) hours."

¶4     In November 2023, Tami filed an "Ex Parte Verified Motion to Enforce and Clarify/Modify Order and for Sanctions/Expedited Hearing Requested" (the Motion). Therein, she alleged that the Guardians had denied her visitation with Father for several months and had in other respects violated the terms of the Order. Tami asked the court to "enforce, clarify and/or modify" various parts of the Order.

¶5     In February 2024, before a hearing on the Motion had been held, Tami filed a "Petition to Remove Guardians, Appoint Temporary Guardian and Conservator, Determine Level of Care, Rescind Order Restricting Visitation, and for Sanctions" (the Petition). In the Petition, she asserted that the Guardians had continued to deny her the ability to visit Father, against Father's wishes. Tami asked the court to, among other things, "appoint a [c]ourt [v]isitor to investigate [Father's] desires relating to restrictions placed on his visitation rights, . . . appoint a temporary guardian during the pendency of this matter to ensure [Father's] right to associate [was] protected, . . . rescind the restrictions on [Father's] right to associate," remove the Guardians, and appoint "an objective, independent guardian."

¶6     About three weeks later, on February 29, 2024, the court held an evidentiary hearing on the Motion. It subsequently issued a ruling on the Motion, in which it stated, "While the Guardians have acted in good faith in attempting to impose conditions upon [Tami's] visits with [Father], . . . those conditions are not explicitly addressed in [the Order]. However, there is evidence that some additional conditions are warranted for [Father's] health and

safety." Accordingly, the court modified the Order to add conditions to Tami's visits.

¶7 The Guardians then filed a motion for summary judgment on the Petition. The Guardians asserted, "Tami has not introduced any new evidence that would warrant a reassessment of [Father's] situation. Her arguments in [the Petition] stem solely from her dissatisfaction with [the Order] rather than any substantive change in circumstances to [Father]. Issue preclusion bars re-litigation of these issues." Tami filed a memorandum opposing the motion for summary judgment, in which she argued that the Petition addressed "facts and circumstances that [had] occurred" after the issuance of the Order and did not simply relitigate the issues covered in earlier proceedings. She specifically identified—and supported with witness declarations attached to her memorandum—a number of alleged facts and circumstances that had occurred after the court ruled on the Motion, including that Father was "suffering emotionally from his limited ability to communicate with Tami"; that the Guardians had "continued to fail to keep Tami apprised of medical issues of significance"; that the Guardians had continued to deny Tami visits with Father "for petty and disingenuous reasons," such as a claimed misunderstanding of Tami's right to visit Father every "third Sunday"; and that the Guardians had "moved [Father] from his residence without proper notice to Tami or the [c]ourt." Tami averred that "[w]itnesses were present at the [February 29, 2024] hearing" who were prepared to offer testimony in support of her new allegations but that those witnesses were not allowed to testify "due to the limited scope of [that] hearing." And she asserted that there were material facts in dispute regarding these allegations that rendered summary judgment inappropriate.

¶8 On June 27, 2024, the district court issued an order granting the Guardians' motion for summary judgment on the Petition. In support of its order, the court found that neither the requirements for appointing a court visitor nor those for removing a guardian had been met. The court also stated that it would entertain a

motion by the Guardians for an award of attorney fees associated with their bringing the motion for summary judgment.

*The Guardians' Motion for Attorney Fees*

¶9      On July 15, 2024, eighteen days after issuance of the court's summary judgment order, the Guardians filed a motion for attorney fees. In that motion, the Guardians noted that Utah Code section 75-5-303(2)(c) provides that in guardianship proceedings, "[i]f the court determines that the petition is without merit, the attorney fees and court costs shall be paid by the person filing the petition." They then asserted that the Petition "was without merit," arguing as follows:

> [The] Petition was essentially a compilation of [Tami's] grievances regarding how the [c]ourt previously handled the decision to appoint the Guardians. Despite having ample opportunity, Tami did not appeal the [Order], nor did she pursue any procedurally appropriate methods to address her concerns. Instead, she opted to try to re-litigate issues that had already been resolved. [The] Petition lacked substantive merit as it was essentially a motion to reconsider the [c]ourt's previous ruling.

¶10    Tami filed a "Memorandum Opposing Motion for Attorney Fees" fourteen days later, on July 29, 2024. In it, she said she "oppose[d] the [G]uardians' motion for attorney fees" because (1) the Guardians' motion was untimely under rule 73 of the Utah Rules of Civil Procedure, which required a party to seek attorney fees "no later than 14 days after the judgment is entered" and the Guardians' motion fell outside that deadline and (2) the Petition was not without merit and, thus, the Guardians did not qualify for an award of fees anyway. Tami contended that the Petition was based on facts and legal arguments that went beyond what had been at issue in the Motion; that in addition to seeking removal of the Guardians, the Petition also requested the appointment of a court visitor, as permitted by statute; that the

Petition sought termination of the restrictions on Tami's visits with Father—again as permitted by statute—based on new witness testimony; and that the Petition addressed the matter of Father's "right to visit with his . . . loved ones" and therefore was "not a matter of 'little importance.'"

¶11 The court issued an order on the Guardians' request for attorney fees in October 2024. Regarding the timeliness of the Guardians' motion, the court acknowledged that it had been filed outside rule 73's deadline. But the court decided not to enforce that deadline, explaining as follows:

> The Guardians argue that the delay was due to illness and the 4th of July holiday, and that [r]ule 61 [of the Utah Rules of Civil Procedure] coupled with the policy recognized by the Utah Supreme Court "in favor of deciding cases on their merits rather than on procedural technicalities" (*Richards v. Baum*, 914 P.2d 719, 723 (Utah 1996) (Stewart, J., dissenting)), weigh in favor of permitting the [motion for attorney fees].
>
> While the authority cited by the Guardians is persuasive, the [c]ourt notes that, if [r]ule 61 routinely was relied upon to excuse untimely filings[,] then the various deadlines set forth in the [r]ules would cease to have any effect. Moreover, the Guardians easily could have sought an extension of the 14-day deadline, but did not do so. However, the Guardians also note that [Tami] technically failed to comply with the [r]ule by filing an "Opposition" rather than an "Objection." Nor does [Tami] raise any arguments regarding the amount of the fees claimed. The [c]ourt finds that it would not be equitable to strictly enforce [r]ule 73 against the Guardians, but not against [Tami].

The court then determined that the Petition was without merit, stating,

> For the reasons set forth in [the court's June 27, 2024 order granting the Guardians' summary judgment motion], the [c]ourt finds that the Petition was without merit pursuant to Utah Code [section] 75-5-303(2)(c). [Tami] attempted to re-litigate the [c]ourt's [initial] guardianship decision [set forth in the Order], but [she] failed to file an appeal of that decision. Moreover, while she objected to decisions made by the Guardians with respect to her visits with [Father], she adduced no evidence that the Guardians violated [the Order], or that they breached their obligation to ensure [Father's] health and safety.

Accordingly, the court granted the Guardians' request for attorney fees.

*The Appeal*

¶12 Tami filed a timely notice of appeal and an amended notice of appeal. The caption of the notice of appeal did not identify the appellant or the appellees; instead, it stated simply, "IN THE MATTER OF THE GUARDIANSHIP OF DAVID HAROLD MATTHEWS." The amended notice of appeal contained a caption listing Tami as the appellant and only Todd as the appellee. Neither the notice of appeal nor the amended notice of appeal included Tina's name in the caption, in the text of the notice, or in the attached certificate of service. The certificates of service each stated that the notice to which it was attached had been served via electronic filing on Zenock Bishop, who was counsel of record for the Guardians (although that fact was not expressly stated on the certificates of service). The caption of Tami's principal brief likewise listed Tami as the appellant and only Todd as the appellee. Tami's reply brief's caption listed "DAVID TODD

MATTHEWS, ET AL." as the "Appellees," and its text expressly identified Tina as an appellee.

ISSUES AND STANDARDS OF REVIEW

¶13　We first consider the Guardians' argument that Tami's appeal is jurisdictionally barred because Tami did not name Tina as a party on the notice of appeal or in her principal brief. "The issue of subject matter jurisdiction is a threshold issue, which can be raised at any time and must be addressed before the merits of other claims. Therefore, we must determine whether we have subject matter jurisdiction before reaching the merits of [Tami's] claims on appeal. Whether this court has jurisdiction to hear an appeal is a question of law." *Pearson v. South Jordan Emp. Appeals Board*, 2009 UT App 204, ¶ 8, 216 P.3d 996 (cleaned up).

¶14　Because we conclude that we have jurisdiction, we also consider the merits of Tami's appeal. However, because Father has passed away, the only remaining issue in Tami's appeal is whether the district court erred in awarding attorney fees to the Guardians. Tami contends that the award was improper because the Guardians' motion was untimely. This timeliness argument requires us to interpret the relevant rule of civil procedure. "[W]e review a district court's interpretation and application of our rules of civil procedure for correctness." *Sanders v. Sanders*, 2021 UT App 122, ¶ 4, 502 P.3d 1230. Tami also asserts that the district court erred in determining that the Petition was meritless under Utah Code section 75-5-303(2)(c) and, thus, that the fee award was appropriate. When a "without merit" determination under Utah Code section 78B-5-825(1), Utah's general "bad-faith attorney fees statute," is reviewed on appeal, the "'without merit' determination is a question of law that we review for correctness." *McFarland v. McFarland*, 2024 UT App 31, ¶¶ 9, 12, 547 P.3d 204 (cleaned up). We hold that a "without merit" determination under section 75-5-303(2)(c)'s attorney fees provision is likewise a question of law, which we review for correctness.

ANALYSIS

I. Jurisdiction

¶15 The Guardians assert that Tami's appeal "is jurisdictionally defective" because Tami "failed to include [Tina] as a party in the Amended Notice of Appeal or anywhere else in the appellate filings." The Guardians contend that "[a] party whose rights are directly impacted by the judgment must be included for the appellate court to exercise jurisdiction over the appeal." To support this proposition, they rely on the portion of *Trapnell & Assocs., LLC v. Legacy Resorts, LLC*, 2020 UT 44, 469 P.3d 989, wherein our supreme court stated, "Without a valid notice of appeal, the court of appeals lack[s] jurisdiction." *Id.* ¶ 70. But that language from *Trapnell* only *prompts* the questions of what makes a notice of appeal defective and what constitutes a valid notice of appeal. The remainder of *Trapnell* identifies one thing—which is not present here—that can make a notice of appeal defective, namely, when the party filing the notice of appeal "was not a proper party when it filed its notice of appeal." *Id.* ¶ 65. *Trapnell* does not hold that omitting an opposing party's name from the notice of appeal renders the notice of appeal invalid. *See id.* Therefore, while *Trapnell* stands for the proposition that an appellate court lacks jurisdiction when there is no valid notice of appeal, it does not stand for the proposition that failing to identify one of the opposing parties on the notice of appeal makes that notice invalid. The Guardians point to no other authority supporting that proposition.

¶16 "Notices of appeal are governed by rule 3 of the Utah Rules of Appellate Procedure." *Davis v. Central Utah Counseling Center*, 2006 UT 52, ¶ 13, 147 P.3d 390. Rule 3(d) dictates that a "notice of appeal must . . . (1) specify the party or parties taking the appeal; (2) designate the judgment or order being appealed; (3) name the court from which the appeal is taken; and (4) name the court to which the appeal is taken." Utah R. App. P. 3(d). Notably, this rule does not require the appellant to specify the party or parties against whom the appeal is taken. *See id.*

¶17 Moreover, rule 3 indicates that "[a]n appellant's failure to take any step other than timely filing a notice of appeal does not affect the validity of the appeal, but is ground only for the appellate court to act as it considers appropriate, including dismissing the appeal or other sanctions short of dismissal, and awarding attorney fees." *Id.* R. 3(a)(2). Our supreme court has explained that "[t]he timely filing of a notice of appeal is the act that vests the appellate court with jurisdiction over the appeal," *Davis*, 2006 UT 52, ¶ 13, and that "[i]t is clear from the plain language of rule 3(a) that the timely filing of the notice of appeal is the only jurisdictional step," *Gorostieta v. Parkinson*, 2000 UT 99, ¶ 19, 17 P.3d 1110. "Therefore, in cases where an appellant timely files notice but fails in some other respect to comply with rule 3, the appellate court may dismiss the appeal but is not required to do so." *Davis*, 2006 UT 52, ¶ 13. "Even where an appellant files a notice crippled with defects and fails to effectively serve the opposing party, the notice is jurisdictionally sufficient if it complies with the timeliness requirement." *Id.* ¶ 14 (cleaned up).

¶18 Accordingly, because Tami timely filed her notice of appeal, this court has jurisdiction over the appeal; her failure to name Tina in the notice did not deprive us of jurisdiction.[2] And while a failure to comply with rule 3 can result in dismissal or other sanctions, the Guardians have not argued that such action would be appropriate here, and we elect not to exercise our discretion to dismiss the appeal or otherwise sanction Tami sua

---

2. There is one circumstance under which our supreme court has recognized an additional jurisdictional requirement for a notice of appeal: in child welfare proceedings, a notice of appeal must contain a parent's signature. *See In re O.N.*, 2024 UT App 27, ¶¶ 1–4, 546 P.3d 355. *See generally* Utah R. App. P. 53(b); Utah Code § 78A-6-359(2)(b). That circumstance is not present here.

sponte, particularly where rule 3 contains no affirmative requirement to name the opposing parties.[3]

¶19     The Guardians also assert that Tami violated rule 24 of the Utah Rules of Appellate Procedure by not naming Tina in her principal brief, and they suggest that this also creates a jurisdictional defect. Rule 24 dictates, "Principal briefs must contain . . . [a] list of current and former parties," including "all parties to the proceeding in the appellate court and their counsel; and . . . listed separately, all parties to the proceeding in the court or agency whose judgment or order is under review that are not parties in the appellate court proceeding." Utah R. App. P. 24(a).

¶20     "This court has discussed the purposes of rule 24's briefing requirements," including that they "serve to focus the briefs, thus

---

3. Although the Guardians did not raise the issue, we observe that Tami failed to strictly comply with the requirement that "[i]f counsel of record is served, the certificate of service must include the name of the party represented by that counsel." Utah R. App. P. 3(e). Nonetheless, for the same reasons outlined above, this does not present a jurisdictional bar to Tami's appeal. *See Davis v. Central Utah Counseling Center*, 2006 UT 52, ¶¶ 12–15, 147 P.3d 390.

It also does not prompt us here to dismiss the appeal. In *Davis*, the appellants failed to serve the appellees with notice of the appeal, and our supreme court stated that it was "disinclined" to dismiss the appeal "where there [was] no evidence that [the appellants'] failure to serve the notice resulted in any actual prejudice to either [appellee]." The supreme court continued, "Indeed, both [appellees] received actual notice of the appeal through their receipt of [the appellants'] brief, entered an appearance in these proceedings, and filed timely briefs addressing the substantive issues." *Id.* ¶ 15. Here, the Guardians were both represented by the same attorney, and Tami served her notice of appeal on this attorney. Thus, the Guardians both received actual notice of the appeal, and we are disinclined to dismiss the appeal based on Tami's technical failure regarding the certificate of service.

promoting more accuracy and efficiency in the processing of appeals." *Burns v. Summerhays*, 927 P.2d 197, 199 (Utah Ct. App. 1996) (cleaned up). And we may decline to consider a party's arguments where the briefing requirements are not satisfied. *See id.* We have repeatedly done so when a party's legal analysis is inadequate, reasoning that where an appellant "has failed to provide adequate legal analysis and legal authority in support of [its] claims, [the] appellant's assertions do not permit appellate review." *Id.* at 199–200. But we do not decline to consider an appeal every time a brief fails to strictly comply with our rules. And the failure to follow briefing requirements does not create a lack of jurisdiction in any event.

¶21 Here, the Guardians do not argue that Tami's principal brief was substantively deficient, only that it failed to name Tina as a party. We do not know why Tami failed to name Tina as a party, and we do not favor such an omission. But it is clear from Tami's brief that she was appealing the district court's grant of summary judgment and award of attorney fees with respect to both of the Guardians. Moreover, the Guardians have not presented any argument that they have been harmed by Tami's failure, and Tami's reply brief addresses the initial omission by identifying Tina as an appellee. Because Tami's initial mistake in this regard does not create a jurisdictional defect and because we are not convinced that it has frustrated the purposes of rule 24 or harmed the Guardians, we proceed to consider the merits of Tami's appeal. *See Anderson v. Thompson*, 2008 UT App 170U, para. 7 n.4 ("We recognize that we may disregard or strike briefs that do not comply with the requirements of rule 24. However, we are not *obligated* to strike or disregard a marginal or inadequate brief, and we usually reserve such a harsh sanction for cases where the noncompliance with rule 24 is much more egregious than that here." (cleaned up)).

## II. Attorney Fees

¶22 Tami asserts that the district court's grant of the Guardians' request for attorney fees should be reversed because the court's

interpretation of rule 73 of the Utah Rules of Civil Procedure to "excus[e] . . . the [G]uardians' untimely filed [m]otion for [a]ttorney [f]ees was an error as a matter of law." Tami also argues that the court's determination that the Petition was "without merit" was in error. We agree with Tami on both fronts and address her arguments in turn.

A.      Rule 73

¶23    The version of Rule 73(a) of the Utah Rules of Civil Procedure in effect at the time the Guardians filed their motion for attorney fees stated,

> Attorney fees must be claimed by filing a motion for attorney fees no later than 14 days after the judgment is entered, except as provided in paragraph (f) of this rule, or in accordance with Utah Code § 75-3-718, and no objection to the fee has been made.

Utah R. Civ. P. 73(a) (effective May 1, 2019).[4] In short, this provision generally required a party claiming attorney fees to file a motion therefor within fourteen days of when a judgment was entered, and it also identified exceptional circumstances where this requirement did not need to be met. *See id.*

---

4. Available at https://legacy.utcourts.gov/utc/rules-approved/wp-content/uploads/sites/4/2019/04/URCP073.Redline.pdf [https://perma.cc/PMZ9-6QJV]. An amended version of rule 73 became effective on May 1, 2026. *See* Utah R. Civ. P. 73(a). Because the amended language of subsection (a) is material to the issue addressed here, we analyze the version of that subsection in effect when the Guardians filed their motion for fees. The amendments to other subsections of the rule are not relevant to our analysis here, and we therefore refer to the current versions of the other subsections cited or analyzed herein.

¶24   The district court acknowledged that the Guardians' motion for attorney fees did not meet the general fourteen-day deadline. But the court credited the Guardians' argument that Tami "technically failed to comply with the [r]ule" herself by (1) "filing an 'Opposition' rather than an 'Objection'" and (2) not "rais[ing] any arguments regarding the amount of the fees claimed." The court then determined that "it would not be equitable to strictly enforce [r]ule 73 against the Guardians . . . [and] not against [Tami]." However, the court's justification for excusing the Guardians' failure to meet the filing deadline was based on a misreading of the rule.

¶25   Rule 73(a) did not create a general requirement for a party who wished to contest an attorney fees award to file a document specifically titled as an "objection" that contested "the amount of the fees claimed." As already noted, the general requirement set forth in rule 73(a) was aimed at the party claiming fees and required that party to "fil[e] a motion for attorney fees no later than 14 days after the judgment [was] entered." *Id.* Contrary to the district court's apparent reading, the last clause of rule 73(a)—which stated, "and no objection to the fee has been made" (the "no objection" clause)—is not part of the general rule. This is demonstrated by the grammatical infirmity that results when the language of the general rule and the "no objection" clause are placed together through omission of the other language of exception: "Attorney fees must be claimed by filing a motion for attorney fees no later than 14 days after the judgment is entered . . . and no objection to the fee has been made." *Id.* Because of the grammatical disconnect between the general rule and the "no objection" clause, the "no objection" clause plainly placed no requirement on a party contesting an award of attorney fees to file a document titled "objection" and contest the amount of the fees that are claimed, other than perhaps in the context of rule 73(f) and Utah Code section 75-3-718.

¶26   Instead, the "no objection" clause was plainly associated only with the circumstances under which the general filing deadline did not apply: (1) when a party sought attorney fees "as

provided in paragraph (f) of [rule 73]" and (2) when a party sought attorney fees "in accordance with Utah Code [section] 75-3-718." *See id.* In those circumstances, the party seeking fees did not need to file a motion for fees within fourteen days after the entry of judgment—as long as "no objection to the fee ha[d] been made." This makes sense upon an examination of the circumstances addressed in paragraph (f) of rule 73 and Utah Code section 75-3-718.

¶27　Paragraph (f) of rule 73 first provides, among other things, that a party who is willing to accept an award of fees in an amount set forth in the rule—rather than in an amount based on an affidavit of fees actually incurred—can (1) "state the basis for attorney fees" in "the complaint" or (2) "establish[] its right to attorney fees" while "seeking the judgment," instead of requiring the party to establish the right to fees in a post-judgment motion. Utah R. Civ. P. 73(e), (f)(1)–(2). In these scenarios, because the right to fees is established prior to judgment, the need to file a motion within fourteen days *after* judgment is understandably excused. At the same time, however, because nothing in these provisions is "deemed to eliminate any right a party may have to object to any claimed attorney fees," *id.* R. 73(f)(5), the fee award—even if the amount thereof is set by statute—understandably could not be given based solely on the complaint or other pre-judgment demonstration of a right to fees unless "no objection ha[d] been made," *id.* R. 73(a).

¶28　Section 75-3-718 of the Utah Code is similar. It applies to attorney fees in the context of personal representatives. *See* Utah Code § 75-3-718(1). It states in relevant part,

> A personal representative and an attorney are entitled to reasonable compensation for their services. If a petition is filed which either directly or indirectly seeks approval of . . . the attorney's compensation and if no objection is filed by an interested person to the compensation requested, reasonable compensation shall be the compensation

> sought in the petition. . . . When an interested person objects to the attorney's compensation, the court shall determine reasonable compensation for the attorney.

*Id.* Where an award of fees in this circumstance will be granted based on the "compensation sought in the petition" "if no objection is filed," *id.*, it makes sense to not require a separate motion to be filed within fourteen days after judgment if no objection is filed but to still require such a motion if an objection is filed.

¶29 In short, rule 73(a) plainly set forth a general requirement aimed at parties seeking an award of attorney fees. The requirement was simply that "[a]ttorney fees must be claimed by filing a motion for attorney fees no later than 14 days after the judgment [was] entered." Utah R. Civ. P. 73(a) (effective May 1, 2019). Because the "no objection" clause of rule 73(a) was plainly connected only to the exceptions to the general rule and not to the general rule itself, the "no objection" clause imposed no requirement on a party—like Tami—who contested an award of attorney fees outside the context of rule 73(f) and section 75-3-718 to file a document titled "objection" that contested the amount of the fees that were claimed.

¶30 Instead, the general rule for opposing motions applied. *See* Utah R. Civ. P. 7(d). Under that rule, a "nonmoving party may file a memorandum opposing the motion within 14 days after the motion is filed," and the "nonmoving party must title the memorandum substantially as: 'Memorandum opposing motion [short phrase describing the relief requested].'" *Id.* R. 7(d)(1) (brackets in original). While the opposing memorandum "must include . . . the grounds supporting [the nonmoving party's preferred] disposition," *id.* R. 7(d)(1)(A), there is no requirement that those grounds include a dispute as to the amount of the fees that are claimed, *see id.* Thus, Tami complied with the applicable rule—rule 7(d)—when she (1) filed a "Memorandum Opposing Motion for Attorney Fees" fourteen

days after the Guardians filed their motion for attorney fees and (2) argued that the motion should be denied on the grounds that it was untimely.

¶31 Given the foregoing, Tami did not "technically fail[] to comply with [rule 73]," as the district court concluded. Thus, to the extent that Tami's failure to file an "Objection" raising "arguments regarding the amount of the fees claimed" was the reason for the court excusing—based on equitable considerations—the Guardians' untimely filing of their motion for attorney fees, Tami is correct that the "court's excusal of the [G]uardians' untimely filed [m]otion for [a]ttorney [f]ees was an error as a matter of law." However, it is not clear to us that the court was relying solely on its interpretation of rule 73—rather than also relying on general principles of equity—when it excused the Guardians' untimely filing of their motion for attorney fees.[5] Accordingly, we assume for purposes of argument that the court nevertheless had discretion to afford the Guardians a four-day extension to file their motion, and we address the issue of whether the court erred in its determination that the Petition was without merit.

---

5. In deciding to excuse the Guardians' untimely filing of their motion for attorney fees, the district court mentioned rule 61 of the Utah Rules of Civil Procedure, which states in part, "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." But the court did not rest its excusal of the Guardians' untimely filing on this rule, explaining that "if [r]ule 61 routinely was relied upon to excuse untimely filings[,] then the various deadlines set forth in the [r]ules would cease to have any effect." Because the court did not apply rule 61 and the Guardians have neither cross-appealed that decision nor asked us to affirm on this basis as an alternative ground, the question of whether that rule could properly have been applied in this circumstance to excuse the untimely filing is not before us.

B.      Determination that the Petition Was Without Merit

¶32     The district court relied on Utah Code section 75-5-303 as the basis for its award of attorney fees. Subsection (1) of that provision states in relevant part that "any person interested in an allegedly incapacitated person's welfare may petition for a finding of incapacity and appointment of a guardian." Subsection (2)(c) then provides, "If the court determines that the petition is without merit, the attorney fees and court costs shall be paid by the person filing the petition."[6] Accordingly, the district court's attorney fees award hinged on a determination that the Petition was without merit.

¶33     In the context of Utah's general bad-faith attorney fees statute, which allows for an award of fees upon a determination that an "action or defense to [an] action was without merit *and* not brought or asserted in good faith," Utah Code § 78B-5-825(1) (emphasis added), we have explained that "'without merit' . . . means something worse than just having a losing claim." *McFarland v. McFarland*, 2024 UT App 31, ¶ 33, 547 P.3d 204 (cleaned up). "The term 'without merit,' as used in the bad-faith statute, implies bordering on frivolity, with the term 'frivolous' meaning of little weight or importance [or] having no basis in law or fact." *Id.* (cleaned up). We hold that the same meaning of "without merit" applies under section 75-5-303(2). Under that meaning, the district court's determination that the Petition was without merit was in error.

---

6. Because the Petition was not an initial petition for a finding of incapacity and appointment of a guardian but, rather, a petition to modify an order issued previously under Utah Code section 75-5-303, there is a question as to whether subsection (2)'s attorney fees provision could ever apply to the Petition. However, because we conclude that the Petition was not without merit in any event, we assume (without deciding) for purposes of this appeal that the Petition qualifies as the type of petition to which section 75-5-303 and its attorney fees provision applies.

¶34 The district court explained that the Petition was without merit (1) "[f]or the reasons set forth in [the court's June 27, 2024 order granting the Guardians' summary judgment motion]"; (2) because the Petition "attempted to re-litigate the [c]ourt's [initial] guardianship decision" set forth in the Order, which Tami did not appeal; and (3) because Tami had "adduced no evidence" that the Guardians had violated any of the district court's orders or "breached their obligation to ensure [Father's] health and safety." None of these reasons is adequate to support the court's determination that the Petition was without merit.

¶35 First, while the district court's order granting the Guardians' motion for summary judgment sets forth reasons for the court's conclusion that the Petition contains losing claims, it does not explain why the Petition contained "something worse than just . . . losing claim[s]." *Id.* In other words, the court's summary judgment order did not go the required step further and explain why the Petition's claims "border[ed] on frivolity" in that they were "of little weight or importance" or had "no basis in law or fact." *Id.* (cleaned up). Because of this, the court's reliance on the reasons set forth in its summary judgment order as a basis for awarding attorney fees was in error.

¶36 Second, the Petition was not a mere attempt to re-litigate the court's initial guardianship decision that was set forth in the Order. Nor was it even an attempt to obtain a rehearing on the issues raised in the Motion; after all, Tami filed the Petition before the hearing on the Motion had been held and before the issues related to the Motion had been decided. Rather, as Tami contended below, the Petition was based on alleged facts and legal arguments that went beyond what had been at issue in the Guardians' initial petition and in the Motion. Specifically, it alleged that Father was "suffering emotionally from his limited ability to communicate with Tami"; that the Guardians had "continued to fail to keep Tami apprised of medical issues of significance"; that the Guardians had continued to deny Tami

visits with Father "for petty and disingenuous reasons," such as a claimed misunderstanding of Tami's right to visit Father every "third Sunday"; and that the Guardians had "moved [Father] from his residence without proper notice to Tami or the [c]ourt." In other words, the court relied on a mistaken characterization of the record when it based its without-merit determination on the notion that the Petition was a mere attempt to re-litigate issues previously addressed in the Order or even those raised by the Motion.

¶37　Finally, the court was similarly mistaken when it based its without-merit determination on Tami having "adduced no evidence" that the Guardians had violated any of the district court's orders or "breached their obligation to ensure [Father's] health and safety." The court itself had already stated in its ruling on the Motion that the Guardians had imposed conditions on Tami's visits with Father that had not been set forth in the Order. Moreover, Tami's failure to put on additional evidence of her new allegations appears to have been due, at least in part, to the fact that—despite there being "[w]itnesses . . . present at the [February 29, 2024] hearing" who were prepared to offer testimony in support of the new allegations—those witnesses were not allowed to testify "due to the limited scope of [that] hearing."[7] Accordingly, the court's last reason for determining that the Petition was without merit is also insufficient to support that determination.

¶38　For the foregoing reasons, we conclude that the district court erred in determining that the Petition was without merit. We therefore reverse the court's award of attorney fees to the Guardians.

---

7. In their reply memorandum in support of their motion for summary judgment, the Guardians did not contest Tami's allegation in this regard.

CONCLUSION

¶39    We have jurisdiction over Tami's appeal. The district court erred in its application of rule 73 of the Utah Rules of Civil Procedure to excuse the Guardians' untimely motion for attorney fees, and to the extent that the court nevertheless had discretion to afford the Guardians a four-day extension, it erred by concluding that the Petition was without merit. We therefore reverse the court's award of attorney fees to the Guardians.

---